UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SECURITIES AND EXCHANGE COMMISSION
100 F Street, N.E.
Washington, D.C. 20549,

        Plaintiff,

  v.

DAVID A. SCHWINGER
c/o John M. Fedders, Esq.
1914 Sunderland Place, N.W.
Washington, D.C. 20036-1608,

        Defendant.

C.A. No. _____-_____

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") alleges that:

### NATURE OF THE ACTION

1. On November 5, 2004, David A. Schwinger ("Schwinger"), an attorney, engaged in unlawful insider trading in the securities of Vastera, Inc. ("Vastera"). More particularly, Schwinger misappropriated material, nonpublic information concerning the imminent merger of Vastera which he had learned from interviewing Vastera's Chief Counsel ("Chief Counsel"), who was exploring job opportunities with Schwinger's firm in anticipation of the merger, and purchased 10,000 shares of Vastera common stock in breach of a duty of trust and confidence to his firm. At the time, Schwinger knew that Vastera was a client of his firm.

2. The merger was first publicly announced on January 7, 2005, when Vastera issued a press release before the market opened stating that it would be acquired by JP Morgan

Chase Bank N.A. ("Chase") for $3 a share. Vastera's share price, which had closed at $2.00 on January 6, rose 50% to $3 a share by the close of the market on January 7 on approximately four times the historical average daily trading volume.

3. By trading on November 5, 2004, on the basis of material, nonpublic information, Schwinger had imputed illicit profits of $13,027.00.

4. By engaging in such conduct, Schwinger violated Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b)] ("Exchange Act") and Exchange Act Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

5. Unless restrained and enjoined by this Court, Schwinger will continue to engage in transactions, acts and practices that violate these provisions of the federal securities laws. The Commission seeks permanent injunctions against future violations and other relief requested in this Complaint.

## JURISDICTION

6. This Court has jurisdiction over this action pursuant to Sections 21(d)(1), 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d)(1), (e) and 78aa].

7. In connection with the transactions, acts and practices described in this Complaint, Schwinger, directly or indirectly, used the means or instrumentalities of interstate commerce, the mails, or the facilities of a national securities exchange.

## DEFENDANT

8. David A. Schwinger, age 50, was, during the relevant time period, a licensed attorney and the managing partner of the Washington, D.C. office of Katten Muchin Rosenman LLP ("KMR") where he worked until November 2006, when he withdrew from the partnership. He resides in Washington, D.C.

## THE ISSUER

9. Vastera, Inc. was, during the relevant time period, a Delaware corporation headquartered in Dulles, Virginia, which helped businesses track information regarding their international shipments. Prior to its acquisition in 2005, Vastera's securities were registered with the Commission pursuant to Section 12(g) of the Exchange Act, and traded on the Nasdaq National Market under the symbol "VAST."

## FACTS

### A. Acquisition of Vastera

10. Beginning in March 2004 and continuing on and off over the next nine months, Vastera engaged in discussions with Chase regarding Chase's potential acquisition of Vastera. The Chief Counsel worked on the potential acquisition throughout the relevant time period.

11. On October 26, 2004, Vastera received its first formal offer from Chase, which Vastera's Chief Counsel participated in communicating to Vastera's board of directors that same day.

12. The public announcement of Vastera's acquisition by Chase was first made on January 7, 2005.

### B. The Chief Counsel Informed Schwinger of the Acquisition in Advance of the Announcement

13. As part of his role as managing partner of KMR's Washington, D.C. office, Schwinger had responsibility for interviewing and evaluating potential new attorney hires, particularly those seeking to move laterally as partners to Schwinger's firm.

14. The Chief Counsel contacted Schwinger in or about May 2004 about possibly joining the firm as a partner in its corporate law practice.

15. At a meeting in June 2004, Schwinger asked the Chief Counsel why he was

interested in leaving Vastera. The Chief Counsel told Schwinger that it was due in part to an anticipated strategic transaction involving Vastera that might impact on his future employment at the company.

16. In the intervening period between his initial contact in June and his subsequent contacts in September 2004 with Schwinger about possible employment, Vastera's Chief Counsel, on behalf of Vastera, retained KMR in August 2004 to perform corporate work relating to the amendment of Vastera's credit facility with a bank. Schwinger signed the engagement letter on behalf of KMR. Thus, he was aware as of August 2004 that Vastera was a client of KMR's.

17. The Chief Counsel contacted Schwinger again in September and October 2004 about his continued interest in joining KMR.

18. In the context of their continued discussions about the Chief Counsel's reasons for leaving Vastera and his business-generating prospects, the Chief Counsel spoke frankly about the possibility of Vastera merging with another entity, the identity of which he did not disclose to Schwinger, and the implications for his being able to generate future business. By no later than October 27, 2004, the day after Vastera received its first formal offer from Chase, the Chief Counsel told Schwinger that an acquisition of Vastera by another entity was imminent.

19. On November 5, 2004, Schwinger purchased 10,000 shares of Vastera stock at an average price of $1.70 per share.

C. **Schwinger's Purchase of Vastera Securities on the Basis of Material, Nonpublic Information and His Imputed Profits**

20. On January 7, 2005, Vastera issued a press release before the market opened stating that Chase would acquire Vastera for $3 a share. Vastera's share price, which had closed at $2.00 on January 6, rose 50% to $3 a share by close of market on January 7 on approximately

four times the historical average daily trading volume.

21.     Schwinger knew, or was reckless in not knowing, that he purchased his Vastera shares based on material, nonpublic information and in breach of a fiduciary duty he owed to his firm, KMR.

22.     By trading on November 5, 2004, on the basis of material, nonpublic information, Schwinger had imputed illicit profits of $13,027.00.

## CLAIM

### *Insider Trading in Connection with the Purchase or Sale of a Security*

**(Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5])**

23.     The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through 22 above.

24.     By engaging in the foregoing conduct, Schwinger violated Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court enter a judgment against Schwinger that:

1.  enjoins Schwinger from violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

2.  orders Schwinger to disgorge all illicit gains, with prejudgment interest;

3.  orders Schwinger to pay appropriate civil penalties under Section 21A of the Exchange Act [15 U.S.C. § 78u-1]; and

4.  grants such other and further relief as this Court may deem just and proper.

Dated: June 13, 2007

Respectfully submitted,

*Nina B. Finston*

Scott W. Friestad
Robert B. Kaplan
Nina B. Finston, D.C. Bar No. 431825
John J. Davidson
Ryan Farney, D.C. Bar No. 480888

Attorneys for Plaintiff
Securities and Exchange Commission
100 F. Street, N.E.
Washington, DC 20549-6041
(202) 551-4961 (Finston)
(202) 772-9346 (Finston fax)